Good morning, and may it please the Court, Owen Praskowitz, on behalf of Appellants. Your Honors, in this consolidated action, the IRS has failed to meet its burden under Section 552 in its response to Appellants' five respective FOIA requests. Specifically, IRS's search was unreasonable in its disregard of thousands of pages of documents that were co-mingled with Appellants' administrative file, and to the extent that an exemption over certain documents pursuant to FOIA Exemption 3 and Section 6103, certain information within those documents is no longer confidential and must be disclosed. Okay, so that's a critical point to your argument, relying on Lambert. What specific information do you believe has been publicly disclosed? Your Honor, specifically, we know for a fact that in the publicly filed tax liens, several entities other than Appellants have been identified, and that's exactly what the District Court found in its order below, is that these entities that have already been disclosed are part of the public record, and that the IRS... Okay, I'm following you there, but as I understand it, a tax lien provides the name of the taxpayer or the entity, the amount of the alleged tax liability, the jurisdiction, a date, you know, some basic information. And the fact that a tax lien is filed against a taxpayer would disclose that there's been a tax lien against a taxpayer, but it doesn't seem that that would disclose any other taxpayer information, such as whether they're subject to an investigation. I mean, are you saying that because a tax lien has been filed, that means that it has been publicly disclosed whether a taxpayer is under an investigation? To that last point, yes, Your Honor. Okay, how? Okay, so a couple things. The fact that a lien has been filed has made clear that, one, that obviously the taxpayer is under investigation because they have been... Okay, well, let me refine the question. It means that there's a claim by the government that the taxpayer owes money, right? They're attaching a lien at some county assessor's office, county recorder's office. So it means to the extent they're under investigation because the IRS claims they owe taxes. Let's be more specific. Does it mean that they're under an investigation with the entities that are your clients and that the fact that they may or may not be included in the investigation file, is that somehow disclosed through the tax lien? Yes, because the tax lien identifies appellants along with those other entities in a single lien, you can extrapolate that the IRS has relied on those other entities' return information for determining the tax liabilities of appellants. So what it discloses is that they're listing related companies or alter egos on the tax lien? Is that what you're saying? Yes. Okay. So from there, we need to take this next step and conclude that that means it's a broader disclosure and it means that it discloses something about the specifics of an investigation as opposed to an allegation of alter ego status or related status. Yes, Your Honor. Now, I want to be clear. Appellants are not saying that all of the return information related to these other entities is disclosable, but two facts are disclosed, obviously the name of those taxpayers and just the fact that they are under investigation. We don't necessarily have access to the IRS's determination and how they got to that. They could be under investigation in a separate matter. We don't know that. I mean, they could be under investigation in multiple investigations. And you want to tie it to this particular investigation, which apparently you cannot determine from the face of the lien or you wouldn't need the FOIA request, right? No, Your Honor. The reason we need the FOIA request is because appellants don't necessarily have the ability to file a power of attorney, which is something the IRS has relied upon for those other entities. Or they don't want to, right? I mean, if you file the power of attorney, that would create some negative evidence for you, right? To establish their allegation that they're alter egos. Your Honor, that might be. There's a host of reasons why an appellant wouldn't be able to file the power of attorney. With that said, taking a step back, it is the IRS's burden under FOIA to disclose information that is no longer public. If the IRS is going to rely on Section 6103, pursuant to FOIA Exemption 3, as the operable law by which it cannot disclose certain information, at a minimum, the IRS has to disclose the names of the entities that are in the commingled file that were identified in the publicly filed tax lien. Would you agree with me that 6103 is pretty broadly written and the description of taxpayer information includes the name of the taxpayer, right? Yes, Your Honor. Okay. And it includes whether they are under any kind of investigation, correct? Yes. Okay. So, if what's been disclosed at this point is that they've had a tax lien filed against them and we know the name of an entity with a tax lien, and that the tax lien lists other entities, how does that then tell us that they're under any investigation, let alone this one? I mean, isn't there a problem under 6103 that that goes to taxpayer information that has not been publicly disclosed? I mean, if it had, you wouldn't need this, right? If that information was publicly disclosed, you don't need anything from this file. Not necessarily, Your Honor. There are a lot of things we can learn from the file and the IRS. Right. So, you want to link something beyond what's publicly available. You want more information than what's publicly available. Initially, that was the purpose of the FOIA request, but respecting the IRS... But isn't it still that you want more than what's publicly available? I mean, it has to be. If everything you want is publicly available, then this is pointless. There must be some additional information that you want beyond what's on the tax liens. Well, what we want is we want to know the full scope of what the IRS relied upon in its determination that the entities other than appellants were the alter egos of appellants or vice versa. And what appellants are requesting here is of the documents... Okay. So, you want insight into the IRS's investigation process, what they're thinking, what they're doing. Why can't you do that through discovery? Well, Your Honor, I was not involved in this litigation from the outset. I understand there might be certain statute of limitations issues with regards to direct appeals of some of the liens against appellants. But to the extent that those statute of limitations have expired, the FOIA request would allow appellants to determine if there are other entities that perhaps it can appeal or it can... So, but counsel, the problem I'm having with what you're suggesting is that I don't think we can make an interpretation of the statute based on whether prior counsel did or did not do something in a timely fashion. If they could conduct discovery, if they could be in litigation with the IRS or file some discovery request under other rules to obtain what they want and didn't do it, that doesn't change the interpretation of the statute, does it? No, Your Honor. But if I can make just one point to that effect, it doesn't matter what happened prior to these FOIA requests. The appellants are entitled, as any U.S. citizen or entity is, to request certain documents, and the IRS is entitled to exempt certain documents. But FOIA is clear that they are required to disclose the information requested unless an exemption applies. And... Right. And we understand that point. And the argument is under Exemption 3, if there's a statutory basis for an agency, not just the IRS, but any agency, not to produce documents, then they don't have to produce documents. You can't use FOIA to trump other law, correct? No, Your Honor. But under Lampert, if information is public, they have to disclose it. Okay. I get your point. But let's tease this out, because you were saying, you know, you're entitled to make a request. Certainly, a citizen can make a FOIA request. But FOIA itself provides that it does not supersede other law. So 6103 exists, and it puts limitations on what the IRS can do in disclosing documents. So that's where we have to look. And then your argument going to Lampert is that if something's publicly disclosed, then it's no longer subject to 6103. All right. So that brings me back to my first question as to what has been publicly disclosed. It's kind of the camel's nose under the tent flap argument, right? I mean, it seems to me what you're suggesting, and I'm asking you this so you can refute this for me. Okay. So what you're saying is if the tip of the nose is under the tent flap, the entire camel comes in. Meaning, you know the name of somebody who has a tax lien, so you get everything. You get all of their taxpayer information, which can't be right, because 6103 is designed to protect the tax holder, not the government. No, Your Honor. And I think I didn't make this point clearly before. What all we're asking for right now is the entities, the identity of those other entities. And you had asked, well, if it's already publicly available, why do we need the FOIA request? Right. And one of the biggest concerns that appellants have had from the get-go of this case is we do not know the full extent of the publicly filed tax liens. We have one publicly filed tax lien that appellants were involved with, but there have been other publicly filed tax liens, as we understand it, that the IRS has filed. And we made this point in our brief that they could be filed in any county throughout the United States. And we are just simply trying to determine the scope of all the entities that have been identified by the IRS for which appellants are liable. That seems to be a different argument than the 6103 prohibitions are waived because information is public. That seems to be an argument that we can require the government to search through every county recorder's office in every county in the country and identify tax liens for you. No, Your Honor. Which is a different matter than a FOIA request. I mean, did you request that under FOIA? Your Honor, what we requested is the entirety of an appellant's administrative file. And the IRS has co-mingled 30 entities within a single file. Understood. I agree with you. But does that mean that a revenue agent's decision on how to organize files trumps statute? That we interpret 6103 based on how a particular revenue agent co-mingled files or organized his files in an investigation? I would agree with you. That probably wasn't a great idea. But now that it's happened, does that mean 6103, it's meaning that that's how we interpret the statute? Well, to the extent that, again, that certain components of his file have been publicly identified, then those elements of his file are required to be disclosed under FOIA. And you know, we've got you down. I'm sorry. I've taken a lot of your time. I know. We've got you down for three minutes. Did you want to reserve time? I still do. But if I can just get a couple points and then I'll reserve the rest of my time. We've been focusing on the documents that have been exempted or that the IRS has claimed an exemption over. But taking a step back, there's a whole host of documents that the IRS did not meet its burden under FOIA. And specifically, with regards to its disregard of about 110,000 pages of documents that it merely because those documents did not include a parent's taxpayer identification number. Okay, Mr. Perkowitz, I've got a couple of questions for you. Okay. So, are you asking for all of the 65 boxes that contained 141,000 pages, are you claiming you want to discover all of that through FOIA? That would have been ideal, but we understand that we're not entitled to all of that information. So, our request is very narrow. We would request that this court remand to the district court in order that the 110,000 pages of documents that have not been identified under a specific exemption, that the IRS provide a Vaughn Index identifying the exemptions for those additional documents that it has not identified an exemption for. So, that's your reasonableness of their search. So, what you're arguing now is that their search and response wasn't reasonable, wasn't sufficient. So, where did these 110,000 pages come from? Is that part, a subset of the 141,000 pages? Yes, Your Honor. And maybe my math is not perfect, but my understanding is the IRS has disclosed or identified exemptions for only about 31,000 pages of documents. And so, extrapolating from the fact that there were 141,000 pages of documents, there's a whole, there's 110,000 pages of documents that the IRS has not accounted for, and because they were included and commingled with a Pellant's administrative file, and because, as this court said in Zemanski, in reviewing the adequacy of the search, the agency needs to view the request there, we believe that a Pellant's request for its full administrative file would include those other documents. And if the IRS is going to withhold documents under an exemption, it needs to identify what that exemption is. All right. Thank you. Your Honor, I have 42 seconds left over the rest of my time. I have a couple of questions. Is Lambert your best case for your position? And if it's not, do you have any other cases that deal with this thing, this idea of public domain? Yes, Your Honor. Lambert is absolutely the best case on that point because it's a Ninth Circuit case, but I would also rely on Tanu v. IRS, which is a district court case out of Hawaii, and that case, it relied on Lambert in noting that if certain information is disclosed, including on a publicly filed tax lien, that's why Tanu is so important, because there's a publicly filed tax lien that that information, including that an entity is under investigation, is now in the public domain. And let me ask you one more question. In looking at the Goldberg case, there are, I think I counted, 18 different entities that are referenced in the footnote along with the five appellants here. Were you seeking information about those 18 aside from the five, or I should say included in the five? Your Honor, we are seeking that information to the extent that we're seeking the identities of the documents, the identities of entities that are in the documents the IRS has withheld. So to the extent I was talking about the publicly filed tax liens earlier, I would equate that same argument to any entities that has been identified in the Goldberg case. And is that to support your theory of super alter ego liability? It's to support our counter argument that we are not the alter egos. Appellants assert that they're not the alter egos, and any information we can uncover to that's one of the reasons for the FOIA request. Thank you. All right, so we're over time. I'll give you a minute or so for rebuttal since we took your time. And Ms. Rubin, please go ahead. Thank you, Your Honors. The company's argument here really relies on two incorrect assumptions. The first is that any and all documents or information in Revenue Officer Black's file are their tax return information. And number two, that any documents or information related to third parties in that file somehow lost its Section 6103 protections by being put in that file. And both of these are incorrect, and let me go over why. And the three cases I would really point to primarily from really each of these points are DiSalvo, George, and kind of a CF to the Martin case. First, the mere placement of a document in Black's file, that he chose to do that. He could have maintained these in separate files. And the fact that he chose to commingle them I don't think should change the analysis under either FOIA or 6103. The commingling should not mean that they get more documents or that there's less 6103 protections for the third party's information. A document could be in the file for reasons relating to investigating a third party separately from anything to do with these entities or even by mistake. So that would be my primary point is you just don't know why a given document is in there. It could be something that's completely separate from any one of these five companies. Mr. Rubin, hold on a second. Judge Bey is trying to ask you a question. I'm trying to ask you a question. It's sort of factual that the IRS claims that the alter egos and successors are simply pawns of the taxpayer. The taxpayer controls them and that's why they're alter egos. And then they turn around and say, but you're not entitled to information which we consider to be your own because the information of the alter ego is that of the principal. How can you square that contradiction? If you're claiming that all these entities are alter egos of the taxpayer, why isn't that information relevant to the taxpayer? I'd say a few things. The first thing, they are all separate taxpayers. They all have separate taxpayer identification numbers. And Congress has made very clear what persons can seek information related to corporations and alter egos are not among them. Now, to the extent that they are alter egos... But doesn't your position, doesn't the IRS's position stop them from using that argument? Once you say that all these alter egos are nothing more than the taxpayers themselves, how can you say that they're separate entities? Well, first of all, for purposes of tax liability, we still treat them as separate entities. But also, no court has... That's what you want them to treat as separate entities. But on one hand, you want them as separate entities when you don't want to give them the information. On the other hand, you say they're not separate entities when you want to levy the tax. You can't have it both ways. First of all, we levy the tax against the taxpayer who is liable, and then this is a collection. The alter ego goes with the collection. But the second thing is, these taxpayers want to use this information to try to show that they are not alter egos. And so for 6103 purposes, it's very important that they're separate taxpayers. And Congress could have said, hey, if you're alleged to be an alter ego, you can get these other entities' documents, but they didn't. Section 6103E1D makes it very clear who can get a corporation's materials and information, and an alter ego is not among them. And I think this case in particular demonstrates the problem. If these companies were to get information saying, we want to disprove this alter ego claim, so give us the information that belongs to these other entities, so that we can show that we should never have gotten information because we're not actually alter egos. Isn't it entitled to just that? I mean, if you have information in these alter ego files that shows that these alter egos are not alter egos, shouldn't it be entitled to that? What I'm saying is that if it's information related to a third party, at this point, it's a third party. No court has found these. Your position and the position of the government is that there is no third party here. These alter egos are the taxpayers. Isn't that so? For purposes of collection, we believe that we should be able to go after them for purposes of collection, but for purposes of 6103, they have not been found to be the same taxpayer. That's a bureaucratic stall. Once you take the position that all these alter egos are indeed nothing but sham transactions and the taxpayer is liable for all of them, how can you possibly say, other than some bureaucratic construct, about, well, one thing is assessment and the other thing is collection? You're stopped from taking a position that these are third parties. Estoppel generally doesn't apply to the government, but even beyond that, the simple fact is that 6103 continues to protect the third party's information. It didn't end because there's some possibility that we are going to succeed in going after them later. There's also the possibility that these parties go forward and say, hey, we've managed to prove that we're not the alter egos, at which point we've automatically violated rule 6 in 6103's protection for those third parties by handing over their information. Well, you can handle that by a limited use of the information of the attorneys of the parties. That would still be releasing information on to third parties without their authorization, and the fact of the matter is, if in fact these are alter egos, it shouldn't really be hard for the companies who have the identification of all of these to the extent they've gotten liens. They get noticed through the liens as to who the different parties are. They could always go and try to get permission and show that they should be one of the parties that should get access to these documents. You know, 6103 E1D says who should be able to get a corporation's materials, and these companies have not shown that they or their attorneys are among that group. Moreover, you know, FOIA permits agencies to put forward time, place, manner requirements, including access requirements, and here you said, look, if you want to get the information about a third party, you need to provide either a power of attorney, FOIA waiver, Privacy Act waiver, and they didn't do that for any of these entities, even ones that they admit that they know about because of either their liens or Goldberg, but they just want to get those documents anyway without dotting the i's and crossing the t's. FOIA permits agencies to require you to dot the i's and cross the t's, and 6103 demands it. 6103 exists. I have a question or two, and again, I'm looking at the Goldberg case out of the Florida District Court, Goldberg versus U.S., and it's got 18 entities mentioned like in a footnote. Right. And what's your response to the fact that it's argued that once they become revealed in legal proceedings that they no longer have the privilege? Go ahead. I'm sorry. I guess I'd say probably three things. The first thing is if there was a limited disclosure by somebody, first of all, that was not the government. The government did not make any disclosure in that case. That footnote, I believe, was provided by the party, by the private party as part of Goldberg, and in fact, one thing that was very interesting to me was that the whole opinion was really about the question about should we be able to get all this information about these third parties, and the court said, yeah, alter egos are not included in 6103E1D. So, no, you can't get that information. I'm mostly going to find you can't get it under 6103H because they're not parties to this litigation. But didn't they come up in legal proceedings, which is one of the exceptions that allows the FOIA information to be disclosed? Only to the extent it's actually been revealed in litigation. The fact that any given entity is in Revenue Officer Black's file, that they're being specifically investigated, we have not disclosed that. Ms. Rubin, the problem I have with the implication of Judge Drain's question is I read Goldberg, and I believe you're correct that the parties submitted that information to the court.  The government did not reveal that information. So what that would mean is in any litigation, in any case, a party could file the names of a bunch of entities, and some filing with the court, and then turn around and say, this has not been publicly disclosed, so 6103 doesn't apply, and we get the information. That's a pretty big runaround, the protections that Congress was enacting for taxpayers. If some other person can just list your name in a court filing, which is what happened, exactly what happened in Goldberg, the government did not disclose that. So a plaintiff in an action or a defendant in an action lists somebody's name, and now all of a sudden 6103 doesn't apply, and you can get all their taxpayer information. I mean, is that where we would go if that footnote in Goldberg is sufficient, since 6103 doesn't apply? I agree, and I also think it's problematic here, because I don't really believe that the companies actually requested a list of the persons or entities who are identified in this file. What they asked for was information related to their taxpayer identification numbers, their tax returns, and closing power of attorneys for themselves. They did not actually ask for the list that appellant's counsel mentioned in his opening. Did they ask the government to search the county recorders' files across the country and identify various entities that have tax liens? Absolutely not. And the other thing is, you know, there's a whole lot of claim about burden on these companies, but the fact is, if you're named in a lien as an alter ego, you get a copy of the lien. That's your notice. And so, you know, you don't need to do a FOIA request to find out who's listed on a lien with you. You got the lien. You get the notice of federal tax lien, and there's your notice. So what happens in a collection action after the government files the lien, then what do they have to prove? Is it sufficient that they listed an entity as an alter ego, that that entity now has liability? I mean, what happens next? You know, you could challenge that notice of a federal tax lien, and there's mechanisms for doing that. And through that litigation, you could try to get additional documents. Well, why is it that you've identified us as these alter egos? If, in fact, the government then needs to take action to try to collect from you, you can try to challenge that collection action and, again, use the litigation process to obtain documents. You know, I think the district court here got it right. FOIA is not a replacement for discovery. And if, in fact, legal action goes forward involving these companies, they can try to seek the discovery process at that point in time, and then they can make an analysis as to what documents. But I'd also like to go to the reply brief here. There really wasn't a challenge to the adequacy of the bond index that was produced here, which was really the affidavits that were produced. You know, documents were 30,000 to 40,000 documents. They were identified as relevant to the requests here, which were, again, limited to these companies, their taxpayer identification numbers, their tax forms, their power of attorneys. Now, and then the ones that were not disclosed were explained, well, these were 6103A, these were 6103E7, the different exemptions that were cited, and that was done in all the affidavits that were produced in both rounds of summary judgment. You know, there really wasn't a claim, oh, you need to do a bond index for the 110,000 documents. You determined weren't actually responsive. Bond index is for exemptions, not for lack of responsiveness. And, you know, their request is what it was. It was a limited request. And if they wanted to get the documents, they said, I want the entire file related to anybody who's in there, you know, they could have asked for that. Now, we would point to the fact that, you know, you look at DeSalvo, you look at George, and they say, well, that still wouldn't mean you'd get it because of 6103. You know, I think the Martin case, I would point to the Martin case as putting just a really good structure. You can have these documents, they could be related to one company, they could be related to a different taxpayer, they could be related to both, and then you need to just analyze it based on that and determine what's responsive and what's protected. I see that my time is up. If there are no further questions, I urge you to affirm, and I also want to thank the court and its administrative staff for all the assistance in getting this virtual argument done. Thank you so much. Thank you. All right, Mr. All right, I'm going to get it right. Presivix? Prescovitz. Prescovitz. Prescovitz. You got it. All right, I'll give you a minute on the clock. Okay, thank you. Your Honor, just because I only have a short amount of time, I want to focus on what is included in Section 6103's definition of what is return information, and that includes any data received by, recorded by, furnished to, or collected by the Secretary with respect to the determination of the existence or possible existence of liability for any person under this title. What that means is that to the extent that Officer Black co-mingled any of these documents, this was data he received or collected to determine the tax liability of appellants and the other entities. By co-mingling those documents and putting them together, he has made those documents part of appellants' return information and by extension part of appellants' administrative file, and that is exactly what appellants requested. So this parsing of words as to what is an administrative file is just a very narrow way for the IRS to avoid having to account for all the documents that it has disclosed. I see my time is up, Your Honor. Unless this Court has any further questions, I'll submit, and we respect the request of this Court, remand to the District Court pursuant to the request articulated in the briefing. All right, thank you. I don't see any further questions. Counsel, thank you both for your arguments this morning, and we will take this case under submission. And our session this morning is adjourned. Thank you. Court for this session stands adjourned.
judges: Bea, Drain, Bade